IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN ROPPA, | ) | |
|     Plaintiff | ) | |
| | ) | Civil Action No. 10-1428 |
| v. | ) | |
| | ) | Judge Nora Barry Fischer |
| GEICO INDEMNITY CO., | ) | Magistrate Judge Lisa Pupo Lenihan |
|     Defendant | ) | |
| | ) | |
| | ) | ECF No. 4 |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Dismiss (ECF No. 4) be granted in part and denied in part.

### II. REPORT

#### A. Factual Background

On June 13, 2001, Plaintiff, Brian Roppa ("Roppa"), was involved in a motor vehicle collision. (Compl., ¶ 3, ECF No. 4-1.) Prior to this collision, Defendant GEICO Indemnity Company ("GEICO"), issued to Roppa a personal automobile insurance policy, policy number D138200 (the "Policy"). (*Id*. at ¶ 4.) The policy provides coverage for first party medical benefits resulting from automobile accidents. (*Id*. ¶ 5.) The Policy has an aggregate limit of $100,000. (*Id.*) Roppa alleges that as a result of the June 13, 2001 collision, he suffered various injuries to his back, legs, and feet, and he incurred various medical expenses as a result of these injuries. (*Id*. ¶¶ 12, 13.)

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1), as the parties are citizens of different states and the amount in controversy exceeds $75,000.00. Venue lies in this district under 28 U.S.C. §1391(a)(2), as a substantial part of the events or omissions giving rise to the claims occurred in this district.

On February 4, 2009, Plaintiff's doctor, John J. Moossy, M.D., suggested Plaintiff consider a new course of treatment. (*Id.* ¶ 19.) As a result, Dr. Moossy, on June 3, 2009, recommended Roppa undergo EMG and nerve conduction studies of his lower extremities. (*Id.* ¶ 27.) Based upon the test results of these studies, Dr. Moossy referred Roppa to Lloyd Lamperski, M.D. (*Id.* ¶ 28.) Dr. Lamperski subsequently administered to Roppa a course of treatment which included three spinal injections and left lumbar nerve blocks. (*Id.*)

GEICO conducted a review into the appropriateness of Plaintiff's ongoing medical treatment. On February 5, 2009, Roppa, at GEICO's request, underwent an independent medical evaluation, performed by Stephen M. Thomas, M.D. (*Id.* ¶ 20.) Dr. Thomas concluded Roppa had reached "maximum medical improvement." (*Id.* ¶ 22.) As a result of Dr. Thomas' medical diagnosis, GEICO denied payment for medical treatment obtained by Roppa on, and following, February 4, 2009, including the EMG and nerve conduction studies, as well as the spinal injections and left lumbar nerve blocks. (*Id.* ¶ 26.)

Thereafter, Roppa initiated the instant action in the Court of Common Pleas of Allegheny County on September 24, 2010. (Notice of Removal, ECF No. 1.) In his Complaint, Roppa alleges in Count I that GEICO breached its contractual obligations to pay first party medical benefits under its Policy (Compl., ¶¶ 37-46), and in Count II, that GEICO committed bad faith by wrongfully refusing to pay these outstanding medical expenses (Compl., ¶¶ 47-50). On October 26, 2010, GEICO removed the action to this Court. (Notice of Removal at ¶2.)

Subsequently, on October 29, 2010, GEICO filed a motion to dismiss Count II of the Complaint, which has been fully briefed and responded to, and thus, is ripe for disposition.

### B.   Standard of Review under Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1960 (May 18, 2009) (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 1949 (citing *Twombly* at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly* at 556-57). The court of appeals has expounded on this standard in light of its decision in *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's recent decision in *Iqbal*:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In light of *Iqbal*, the *Fowler* court then set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim. First, the district court must accept all well-pleaded facts as true and discard any legal conclusions contained in the complaint. *Fowler,* 578 F.3d at 210-11. Next, the court must consider whether the facts alleged in the Complaint sufficiently demonstrate that the plaintiff has a "plausible claim for relief." *Id*. at 211. To survive a motion to dismiss, a complaint must show an entitlement to relief through its facts. *Id*. (citing *Phillips* at 234-35).

Courts generally consider only the allegations of the complaint, its attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint may also be weighed if the plaintiff's claims are based upon those documents. *Id*. (citations omitted). A district court may consult those documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

**C.     Discussion**

GEICO argues that Roppa's bad faith claim in Count II must be dismissed, as a matter of law, because the Pennsylvania legislature intended the MVFRL to provide the exclusive remedy for alleged bad faith denials of first party benefits by insurance companies, and therefore, Plaintiff's bad faith claim under § 8371 is preempted by the MVFRL.

In Count II of the Complaint, Plaintiff seeks to recover damages for GEICO's alleged "bad faith" in violation of 42 Pa.Cons. Stat. Ann. § 8371. Section 8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

*Id.* "Bad faith" is not defined in the statute, however, courts interpreting Pennsylvania law have held that a §8371 claim contains two elements: (1) the insurer lacked a reasonable basis for denying benefits under the applicable policy, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for refusing the claim. *Employers Mut. Cas. Co. v. Loos,* 476 F.Supp. 2d 478, 490 (W.D.Pa. 2007) (citing *Terletsky v. Prudential Prop.,* 649 A.2d 680, 688 (Pa. Super. Ct. 1994)); *see also Horowitz v. Fed. Kemper Life Assur. Co.,* 57 F.3d 300, 307-08 (3d Cir. 1995) (citing *D'Ambrosio v. Pa. Nat'l Mut. Cas. Ins. Co.,* 431 A.2d 966, 971 (Pa. 1981)). The level of culpability required to prove bad faith is something more than mere negligent conduct which is harmful to the insured. *Loos,* 476 F.Supp. 2d at 490 (citing *Brown v. Progressive Ins. Co.,* 860 A.2d 493, 501 (Pa. Super. Ct. 2004)). The superior court expounded on this point in *O'Donnell ex rel. Mitro v. Allstate Insurance Co.*:

> "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

734 A.2d 901, 905 (Pa. Super. Ct. 1999) (citing *Romano v. Nationwide Mut. Fire Ins. Co.*, 646 A.2d 1228, 1232 (Pa. Super. Ct. 1994) (quoting *Black's Law Dictionary* 139 (6th ed. 1990))) (other citation omitted). Considerations of "the motive of self-interest or ill will" of the insurer are not a third element of a bad faith claim, but rather, are probative of the second element

enumerated in *Terletsky, i.e*., "'the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim.'" *Loos,* 476 F.Supp. 2d at 491 (quoting *Terletsky*, 649 A.2d at 688).

The MVFRL requires insurers to cover all "reasonable and necessary medical treatment and rehabilitative services." 75 Pa. Cons. Stat. Ann. § 1712(1). In 1990, the MVFRL was amended to add §1797, which sets forth the procedure to be followed if the insurer wishes to challenge the reasonableness and necessity of an insured's medical treatment. *Schwartz v. State Farm Ins. Co.,* Civ. A. No. 96-160, 1996 WL 189839, at *3 (E.D.Pa. Apr. 18, 1996) (citing *Williams v. State Farm Mut. Auto. Ins. Co.,* 763 F.Supp. 121, 124 (E.D.Pa. 1991)). This procedure was concisely summarized by the district court in *Hickey v. Allstate Property & Casualty Insurance Co.,* as follows:

> If an insurer wishes to challenge the reasonableness and necessity of an insured's medical treatment, it must contract with a peer review organization ("PRO") for evaluation of the healthcare services provided to the insured. *Id*. § 1797(b)(1). The insurer, healthcare provider or insured may challenge the initial determination of the PRO through a request for reconsideration. *Id*. § 1797(b)(2). If an insurer does not utilize the PRO process, the healthcare provider or the insured may challenge the [insurer's refusal to pay for past or future medical treatment] before a court. *Id*. § 1797(b)(4). If either a PRO or a court finds the treatment was medically necessary, the insurer must pay to the healthcare provider the benefits owed with interest at the rate of 12% per year. *Id*. §§ 1797(b)(5)-(6). In the case of a court determination, the insurer must also pay "the costs of the challenge and all attorney fees." *Id.* § 1797(b)(6); see also *id*. § 1716 (providing that if an insurer is found to have acted in an "unreasonable manner" in refusing to pay medical benefits, the insurer shall pay, in addition to benefits owed, "a reasonable attorney fee based upon actual time expended"); *id*. § 1798(b) ("In the event an insurer is found to have acted with no reasonable foundation in refusing to pay [first-party benefits] when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended."). Additionally, if a court finds the insurer's conduct wanton [in refusing to pay for past or future medical treatment where the insurer did not avail itself of the PRO

process], that insurer "shall be subject to a payment of treble damages to the injured party." *Id*. § 1797(b)(4).

*Hickey v. Allstate Prop. & Cas. Ins. Co.,* Civ. A. No. 3:10cv00907, 2010 WL 2606646, at *3 (M.D.Pa. Jun. 25, 2010). *See also* Ronca & Sloane, *Pennsylvania Motor Vehicle Insurance: An Analysis of the Financial Responsibility Law*, §4.4(e)(i) & n. 176-178 at 85-86 (2d ed. 2009) (hereinafter "Ronca") (citing 75 Pa. Cons. Stat. Ann. §§1797(b)(4) – (6)).

The Pennsylvania Supreme Court has not yet addressed the issue of whether the MVFRL preempts § 8371 under the facts presented here. Therefore, this Court must predict how the supreme court would rule if faced with this issue. *Hickey,* 2010 WL 2606646, at *4 (citing *Nationwide Mutual Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000)). In making this prediction, the court "must examine the opinions of the lower state courts, and [it] cannot disregard them unless [it is] convinced by other persuasive data that the highest court would rule otherwise." *Id*. at *2.

A number of courts, including the Pennsylvania Superior Court and United States Court of Appeals for the Third Circuit applying Pennsylvania law, have followed the general rule that §1797(b) preempts §8371 where both apply. *See Barnum v. State Farm Mut. Auto. Ins. Co.,* 635 A.2d 155, 158 (Pa. Super. Ct. 1993), *rev'd in part on other grounds* 652 A.2d 1319 (Pa. 1994); *Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 67 (3d Cir.1994), *reh'g & reh'g en banc denied*, 1994 U.S. App. LEXIS 35219 (3d Cir. Dec. 14, 1994). The decisions in those cases are premised on the finding that the §1797(b) and §8371 are in irreconcilable conflict, pursuant to Pennsylvania law on statutory construction,[1] as the damages

---

[1] 1 Pa. Cons. Stat. §1933. Under Pennsylvania rules of statutory construction:
Whenever a general provision in a statute shall be in conflict with a special provision in the same of another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the specific provisions shall prevail and shall be construed as an exception to the general provisions, unless the general provision shall be

7

in the event of wanton or bad faith conduct and the rates of interest specified in each provision are different, and the procedures and remedies under §1797 are stated with specificity. *Barnum*, 635 A.2d at 158. Therefore, because the two provisions were enacted at the same time and could not be reconciled, the superior court held that the specific provisions of §1797 must be deemed an exception to the general remedy for bad faith contained in §8371. *Id.* at 159.

Subsequently, in *Gemini*, the insured brought an action against the insurer as a result of the insurer's refusal to pay the insured's medical bills. *Gemini*, 40 F.3d at 64. The insured argued this refusal was unreasonable under both § 8371 and the MVFRL. *Id*. The court of appeals ruled in favor of the insurer and held that the MVFRL "must be deemed an exception to the general remedy for bad faith contained in [§ 8371]" and is therefore the exclusive "first party remedy for bad faith denials by insurance companies with respect to claims arising out of automobile accident injuries." *Gemini*, 40 F.3d at 67. In so holding, the court of appeals relied on the superior court's finding in *Barnum* that the damages provided for by § 1797 for "wanton" conduct in denying a claim for first party medical benefits cannot be reconciled with punitive damages for the same conduct under § 8371. In reaching this conclusion, the court of appeals found the superior court's statutory construction in *Burnam* to be convincing and predicted that

---

enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S.A. § 1933. Section 8371 is a general statute and applies to all insurance claims. *Miller*, 2009 WL 577964 at *9 (citing 42 Pa.C.S.A. § 8371; *Harris*, 409 F.Supp.2d at 620-21). Section 1797 of the MVFRL is a specific statutory provision that provides "specific relief for claims of first-party medical benefits." *Id.* (citing 75 Pa.Cons. Stat. Ann. § 1797(b); *Harris*, 409 F.Supp.2d at 620). Accordingly, where claims arising under § 1797 of the MVFRL and § 8371 are based upon the same conduct—for example, an unreasonable denial of first-party benefits— "the statutes are irreconcilable and, [] the specific provisions of the MVFRL will preempt the general provisions of [§ 8371]." *Id.* (citing *Gemini*, 40 F.3d at 67).

However, where a plaintiff states a claim for bad faith under § 8371, and where the claim is premised upon allegations beyond the scope of the MVFRL, the claim will not be preempted by § 1797 in its entirety, and the plaintiff may be allowed to pursue punitive damages under § 8371 to the extent of those claims beyond the scope of the MVFRL. *see Miller*, 2009 WL 577964 at *9.

the Pennsylvania Supreme Court would rule similarly on this matter.[2] However, the court of appeals in *Gemini* was not faced with the situation presented in the case at bar—where the Complaint contains allegations of misconduct beyond the scope of §1797—and thus, is not dispositive here.

Indeed, a conflict exists among the district courts as to whether the holding in *Gemini* applies where the insured alleges both the denial of first party medical benefits under the MVFRL *and* abuse or misuse of the peer review process under §8371 or misconduct beyond the scope of §1797. *See, e.g., Miller v. Allstate Fire & Cas. Ins. Co.,* Civ. A. No. 07-260, 2009 WL 577964, at *8 (W.D.Pa. Mar. 5, 2009) (citing *Perkins v. State Farm Ins. Co.,* 589 F.Supp.2d 559, 564-65 & n. 2 & 3 (M.D.Pa. 2008) (listing cases)).[3] A growing number of district courts have held that a bad faith claim can be asserted under §8371 where the insured alleges bad faith on the part of the insurer for failure to follow the procedure outlined in §1797 or for abuse of that process. *See Schwartz,* 1996 WL 189839, at *4 (insured alleged insurer used a favored PRO, abuse of the peer review process by insurer generally, and by PRO specifically in opining as to causation, not merely the appropriateness of treatment). *See also Perkins,* 589 F.Supp.2d at 565 (insured alleged that insurer utilized a PRO that did substantial work for insurer and thus had

---

[2] Although the superior court's decision in *Barnum* was reversed after the court of appeals decision in *Gemini*, that reversal does not necessarily call into doubt the *Gemini* court's holding, as the reversal in *Barnum* only pertained to the issue of whether an insured was required to request reconsideration under §1797 before proceeding to court, based on its recently decided opinion in *Terminato v. Pennsylvania National Insurance Co.,* 645 A.2d 1287 (Pa. 1994). In addition, the Ge*mini* court was clearly cognizant of any impact the supreme court's recent decision in *Terminato* might have had on *Burnam*, as the *Gemini* court acknowledged the supreme court's recent *Terminato* decision. *Gemini,* 40 F.3d at 65. Moreover, as Judge Rendell explained in *Schwartz,* 1996 WL 189839, *4 n. 3, in her thorough and well-reasoned opinion, the superior court's analysis of the relationship between §8371 and §1797 in *Burnam* was clearly independent of its reliance on the superior court's holding in *Terminato* regarding whether an insured was required to request reconsideration under §1797 before proceeding to court. Thus, Judge Rendell found that the *Barnum* court's statutory analysis of §8371 and the MVFRL remained controlling precedent and was consistent with the conclusion that plaintiff's claim under §8371 in that case was not preempted by §1797. *Id.*

[3] The district court in *Perkins* also noted that many of the decisions holding that the insured may raise §8371 claim based on allegations of bad faith conduct beyond the scope of §1797(b) relied heavily on the opinion of Judge Rendell in *Schwartz*. 589 F.Supp. 2d at 565.

financial interest in providing a biased determination, and PRO continuously provided negative peer review reports to the insurer and other insurers to maintain their business); *Miller,* 2009 WL 577964, at *9 (denying motion to dismiss based on its finding that allegations of misuse of the peer review process to minimize the insurer's financial exposure under the policy fell outside the scope of the protections afforded by the MVFRL); *Johnson v. Northland Ins. Co.,* Civ. A. No. 05CV927, 2005 WL 3488712, *3 (W.D.Pa. Dec. 21, 2005) (denying motion to dismiss bad faith claim where plaintiff alleged the peer review process under §1797(b) was not followed) (citing *Schwartz,* 1996 WL 189839, at *4); *Hickey*, 2010 WL 2606646, at *6 (granting motion to dismiss to extent allegations amounted to challenge to a denial of first party benefits based on reasonableness and necessity of medical treatment, and denying motion to the extent plaintiff alleged abuse of PRO process).[4]

*Miller, Perkins,* and *Schwartz* and numerous other cases support the proposition that the scope of §1797 is limited to claims challenging an insurer's denial of first party benefits predicated on the reasonableness and necessity of medical treatment. *Hickey*, 2010 WL 2606646, at *5 (citing *Stephano v. Tri-Arc Fin. Serv., Inc.,* Civ. A. No. 3:CV-07-0743, 2008 WL 625011, at *6 n. 9 (M.D.Pa. Mar. 4, 2008) ("From the explicit, narrow language of the statute, it is evident that the legislature intended that § 1797 only govern the issue of whether the medical treatment was necessary or reasonable.")). Moreover, Judge Rendell opined in *Schwartz* that "[n]othing in *Barnum* or *Gemini* suggests that a bad faith insurance coverage claim under §8371 is barred by §1797 where the peer review process set out in §1797, namely to determine the propriety of treatment and charges therefore, is not actually followed." 1996 WL 189839, at *4.

---

[4] "Several Pennsylvania trial courts have also held that, where a plaintiff seeks first-party medical benefits under the MVFRL, he is not necessarily precluded from also bringing a bad faith claim based on a defendant's alleged abuse or misuse of the peer review process itself." *Miller*, 2009 WL 577964 at *8, n.2.

Thus. the relevant inquiry, therefore, is whether the misconduct alleged in support of Roppa's bad faith claim falls within the scope of §1797.

Here Roppa alleges the following misconduct in support of his §8371 bad faith claim:

>  (a) Failing to pay first party medical benefits due the plaintiff, Brian Roppa;
>
>  (b) Failing to objectively and fairly evaluate plaintiff, Brian Roppa's first party benefit claim;
>
>  (c) Refusing to promptly and fairly effectuate a resolution of plaintiffs first party medical benefit claim;
>
>  (d) Ordering plaintiff to undergo two "independent" medical examinations to challenge the reasonableness and necessity of the plaintiff's medical treatment as well as the causation of his injuries;
>
>  (e) Putting its own financial and monetary interests ahead of its insured's to the detriment of its insured;
>
>  (f) Dilatory and abusive claim handling;
>
>  (g) Unreasonably closing and terminating plaintiff's first party benefits;
>
>  (h) Failing to properly evaluate and consider all medical evidence demonstrating the severity and extent of plaintiff's accident-related injuries;
>
>  (i) Failing to carry out its fiduciary obligations to the insured in good faith;
>
>  (j) Employing the IME process for an improper purpose, i.e., to create an artificial basis upon which defendant could terminate plaintiff's first party benefits.

Compl., ¶¶48(a)-(i). With the exception of the allegations set forth in paragraphs 48(e) and (j), numerous courts have found the same or similar allegations to constitute a challenge to the denial of first party benefits based on the reasonableness and necessity of treatment. *See, e.g., Perkins,* 589 F.Supp. 2d at 566 (alleged failure to conduct a reasonable investigation, fairly evaluate

coverage, or timely notify insured of denial of benefits, are nothing more than a challenge to denial of first party benefits and fall within scope of §1797); *Hickey,* 2010 WL 2606646, at *5 (allegations of failing to pay first party medical benefits due to the insured, failing to objectively and fairly evaluate insured's claim for first party medical benefits, failing to promptly and fairly effectuate a resolution of insured's claim, and ordering an IME to challenge the reasonableness and necessity of insured's medical treatment, constitute a challenge to denial of first party benefits based on reasonableness and necessity of medical treatment, and thus, fall within purview of §1797(b), precluding bad faith claim under §8371). Accordingly, to the extent Plaintiff's statutory bad faith claim is predicated on the alleged misconduct in paragraphs 48(a) through (d) and (f) through (i), it is preempted by §1797.

In so holding, the Court notes that an insurer need not utilize a PRO in order to trigger the procedures and remedies under §1797. *Hickey,* 2010 WL 2606646, at *5. GEICO argues that *Miller* is inapposite because in that case, the court did not examine the preclusive effect of §1797(b) within the context of a denial of first party medical benefits based on the results of an IME conducted pursuant to §1796(a). GEICO's argument is unavailing because the applicability of §1797 to a particular claim depends not on whether a PRO or IME was utilized, but rather, on whether the dispute is over the reasonableness and necessity of medical treatment. *Hickey*, 2010 WL 2606646, at * 6 (citing *Stephano*, 2008 WL 625011, at *8).[5] GEICO, by its own admission, utilized the second IME in part to determine the reasonableness and necessity of Plaintiff's medical treatment. This is sufficient to trigger the application of §1797(b). As the district court explained in *Hickey*:

---

[5] For this same reason, it does not matter that GEICO may have possessed the authority under §1796(a) and its Policy (a copy of which has not yet been made part of the record in this case) to compel Roppa to undergo two IMEs.

> The MVFRL mandates that automobile insurers provide medical benefit-coverage "for reasonable and necessary medical treatment and rehabilitative services." 75 Pa. Cons.Stat. Ann. § 1712. Prior to the enactment of section 1797 in 1990, the MVFRL did not include a procedure which an insurer could use to challenge whether an insured's treatment was reasonable or necessary. *See Schwartz*, 1996 WL 189839, at *3 ("An insurer's obligation to pay claims for medical benefits was triggered only when the insured submitted 'reasonable proof' of the amount of benefits due.") (citing 75 Pa. Cons.Stat. Ann. § 1716). Thus, the purpose of section 1797 is to provide statutory remedies and procedures in case of a dispute over the reasonableness or necessity of treatment. The element necessary to trigger section 1797 is a dispute over the reasonableness or necessity of treatment, rather than an insurer's utilization of a PRO. *See Stephano*, 2008 WL 625011, at *8 ("[T]he very purpose of § 1797[is] to confirm that 'treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary.' ") (citing 75 Pa. Cons.Stat. Ann. § 1797(b)(1)). Section 1797 can be triggered even when an insurer does not utilize a PRO. In fact, section 1797(b)(4) provides a specific procedure an insured can use to challenge an insurer's denial of benefit payments where the insurer does not utilize a PRO. 75 Pa. Cons.Stat. Ann. § 1797(b)(4); *See Williams v. State Farm Mut. Auto. Ins. Co.*, 763 F.Supp. 121 (E.D.Pa.1991) ("If an insurer denies a claim without requesting a PRO, the provider (or the insured) is authorized to bring a civil action to have the court determine the reasonableness and necessity of treatment.") (citing 75 Pa. Cons.Stat. Ann. § 1797(b)(4)).

*Id.*

Like the insured in *Hickey*, here Roppa disputes the insurer's (GEICO's) conclusion, based on an IME report, that he had reached maximum medical improvement and further medical treatment was neither reasonable nor necessary. This dispute clearly involves a determination of whether Plaintiff's medical treatment is reasonable and necessary, and thus, whether the procedures and remedies of §1797(b) are triggered. In particular, §1797(b)(4) applies here because GEICO did not challenge the reasonableness and necessity of the medical treatment *before a PRO*. Section 1797(b)(4) provides:

13

> **Appeal to court**.--A provider of medical treatment or rehabilitative services or merchandise or an insured may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, *the reasonableness or necessity of which the insurer has not challenged before a PRO*. Conduct considered to be wanton shall be subject to a payment of treble damages to the injured party.

75 Pa. Cons. Stat. Ann. §1797(b)(4) (emphasis supplied). Accordingly, Roppa is only entitled to the remedies set forth in §1797(b)(4) and (6),[6] and may not pursue a §8371 bad faith claim, to the extent he is challenging GEICO's denial of benefits based on the reasonableness and necessity of medical treatment. *See* Ronca, §4.4(e)(iii) at 90.3 (predicting that the Pennsylvania Supreme Court will rule that where the insurer did not utilize a PRO to challenge the reasonableness and necessity of the insured's medical treatment, the remedies set forth in §1797(b)(4) and (6) will apply, not those set forth in §8371).

That does not end the inquiry, however. Roppa contends he has also alleged that GEICO utilized the IMEs "for an improper purpose, i.e., to create an artificial basis upon which defendant could terminate plaintiff's first party benefits" (*id.* at ¶48(j)). In addition, in paragraph 48(e), Roppa alleges that GEIGO "put[] its own financial and monetary interests ahead of its insured's [interests,] to the detriment of the insured." Roppa further alleges that GEICO "had no reason to believe that [his] medical treatment for continuing pain was not reasonably or medically necessary," given the reports of his own health care providers, which the IME physician ignored, and that therefore, "[i]t is believed and, therefore, averred that [GEICO] had and has a practice of attempting to terminate medical treatment by peer review and 'independent'

---

[6]These remedies include:
    (1)  the outstanding amount of all benefits due
    (2)  interest at 12%
    (3)  the costs of the challenge
    (4)  attorneys' fees, and
    (5)  an award of treble damages where the insurer's conduct is wanton .
Ronca, §4.4(e)(i) & n. 176-178, at 85-86 (citing 75 Pa. Cons. Stat. Ann. §§1797(b)(4), (5) & (6)).

medical examination without reasonable cause to do so." (Compl. ¶32.) Roppa submits that abuse of the PRO process can be implied from these statements, and thus, he may pursue a statutory bad faith claim based on these allegations. The Court agrees with Plaintiff that this alleged misconduct is outside the scope of §1797. *See Perkins,* 589 F.Supp. 2d at 565 (claims involving contract interpretation, abuse of the PRO process, or using the PRO process to obtain opinion regarding the cause of insured's injuries are beyond the scope of §1797); *Hickey,* 2010 WL 2606646, at *6 (allegation that insurer had a practice of attempting to terminate medical treatment by IME without reasonable cause to do so constitutes alleged abuse of PRO process, which was sufficient to state a claim under §8371 to allow discovery).

In the case at bar, GEICO sent Roppa for two IMEs, allegedly for the purpose of challenging the reasonableness and necessity of his medical treatment, as well as the causation of his injuries. (Compl., ¶48(d)).[7] Seven years after the vehicle accident, Dr. Stephen Thomas, who conducted the second IME, opined that Roppa had reached maximum medical improvement and that additional aquatics and physical therapy were no longer medically reasonable and necessary, nor was additional aquatics therapy appropriate for the treatment of Roppa's thoracic and lumbar injuries sustained in the June 13, 2001 accident. (*Id.* at ¶21-22 & Ex. 9 to Compl. at 4.) Based on Dr. Thomas' report, GEICO denied payment for any further medical treatment. (*Id.* at ¶31.)

This claim is similar to one made by the insured in *Hickey*, a case which is on all fours with the instant matter. The insurer in *Hickey* paid the insured's first party medical benefits for two years and then stopped payment based on the results of an IME. The insured sued the

---

[7]Although the Court does not yet have the benefit of GEICO's answer to the complaint, in its supporting brief, GEICO submits that it requested the IME so as "to determine medical causation and *the reasonableness and the necessity of [Plaintiff's] treatment*." Def.'s Mem. of Law in Supp. of Mot. to Dismiss Count II of Compl. ("Def.'s Supp. Br.") at 11, ECF No. 4-3.

insurer for breach of contract and statutory bad faith in state court. After the case was removed to federal court, the insurer moved to dismiss the complaint arguing that the MVFRL provided the exclusive remedy for the insured's claims. In response, the insured argued that his statutory bad faith claim was not preempted and the insurer was liable for bad faith under § 8371 to the extent it "had and has a practice of attempting to terminate medical treatment by 'independent medical examination' [IME] without reasonable cause to do so." *Hickey*, 2010 WL 2606646 at *6. The *Hickey* court agreed with the insured and held that this allegation stated an actionable claim under § 8371 because it sufficiently alleged an abuse of the PRO process—an allegation which it held was beyond the scope of the MVFRL. *Id*.

GEICO contends that *Hickey* actually supports its argument for dismissal of Count II because the *Hickey* court granted the motion to dismiss to the extent the insured's bad faith claim was predicated upon allegations similar to those contained in paragraphs 48(a) through (d) of Roppa's Complaint. The Court finds no merit to GEICO's argument. While GEICO is correct that the *Hickey* court granted the motion to dismiss in part, GEICO completely ignores the part of the *Hickey* court's ruling which denied the motion to dismiss the statutory bad faith claim to the extent it was based on allegations of abuse of the PRO process. This Court finds *Hickey* persuasive and the reasoning consistent with the other district courts which have allowed statutory bad faith claims to survive a motion to dismiss where the claims were predicated on allegations of abuse of the PRO process. This Court joins those other district courts to so hold and predicts the Pennsylvania Supreme Court would reach the same conclusion if faced with this issue.[8]

---

[8] *See also* Ronca, §4.4(e) (iii) at 90.3 (predicting that the Pennsylvania Supreme Court will recognize a §8371 claim in the context of a §1797 case, but only in limited circumstances, such as where: (1) the insured clearly demonstrates bad faith by the manner in which the insurer utilized a PRO; (2) the insurer did not properly invoke or

Finally, GEICO argues for the first time in its reply brief that Roppa has failed to allege any facts to support his allegation that it abused the PRO process or IME process, and therefore, has not met the factual pleading requirements established in *Twombly*. In contrast to the complaints in *Perkins* and *Schwartz,* which contained specific factual allegations of "abuse" of the peer review process, GEICO submits that here Roppa has not pled any facts in support of his allegation of abuse of the PRO process.

Roppa responds to this argument by pointing to specific allegations in his Complaint that support the alleged abuse of the PRO process—that he submitted to two IMEs at the request of GEICO (Compl., ¶¶8, 20), and GEICO's physician questioned the cause of his injury and ignored his medical records (Compl. ¶ 21). In paragraph 32 of his Complaint, Roppa alleges that GEICO "had no reason to believe that [his] medical treatment for continuing pain was not reasonably or medically necessary," given the reports of his own health care providers, which the IME physician ignored, and "[i]t is believed and, therefore, averred that [GEICO] had and has a practice of attempting to terminate medical treatment by peer review and 'independent' medical examination without reasonable cause to do so." Roppa submits that these allegations are sufficient to show that he "has a plausible claim that [GEICO] has employed the IME process to create an artificial basis upon which [it] could terminate his first-party benefits—specifically, that [GEICO] has a practice of attempting to terminate medical treatment without reasonable cause by employing biased physicians that choose to disregard insureds' medical records when ascertaining causation." Pl.'s Sur-Reply to Def.'s Reply Mem. of Law in Supp. of its Mot. to Dismiss at 4, ECF No. 12-1.

---

follow peer review procedures; and (3) insurer used peer review procedure to determine causal relation of the alleged injuries and collision.

After reviewing all of the factual allegations in the Complaint, the Court finds that Roppa has pled sufficient facts to state a plausible claim for statutory bad faith based on abuse of the PRO process. In light of *Hickey*, and drawing all reasonable inferences and viewing them in the light most favorable to Plaintiff, this Court finds Plaintiff to have properly alleged a claim under § 8371 based on GEICO's abuse of the PRO process.[9]

## III. CONCLUSION

For the reasons set forth above, the Court recommends that Defendant's Motion to Dismiss Count II of the Complaint (ECF No. 4) be granted with respect to those allegations preempted by § 1797 of the MVFRL, enumerated at ¶¶48(a)-(d) and 48(f) - (i) of the Complaint, and that the Motion be denied with respect to Plaintiff's allegation of GEICO's abuse of the PRO process, set forth at 48(e) and 48(j) of the Complaint.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(A), and Rule 72.C.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of issuance of this Order to file an appeal to the District Judge, which includes the basis for objection to this Order. Any party opposing the appeal shall have fourteen (14) days from the date of service of the notice of appeal to respond thereto. Failure to file a timely notice of appeal may constitute a waiver of any appellate rights.

Dated: December 29, 2010

BY THE COURT

LISA PUPO LENIHAN
Chief U.S. Magistrate Judge

cc: All Counsel of Record
*Via Electronic Mail*

---

[9] In light of the Court's conclusion, it is not necessary for the Court to consider Plaintiff's request, in the alternative, for leave to file an amended complaint to provide a more definite statement of abuse of the PRO process.